WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Loni Dee Ashcroft,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-21-08115-PCT-GMS<br><br>**ORDER** |

Plaintiff Loni Dee Ashcroft seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence, the Commissioner's decision is remanded for further administrative proceedings.

**BACKGROUND**

Plaintiff was born in April 1966, has some high school education and vocational training. She worked at Western Refinancing as an associate and at Sonic as a service station attendant, cashier and stocker.

On January 18, 2017, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning October 31, 2014. The claim was denied initially on June 1, 2017, and upon reconsideration on August 24, 2017.

1  Plaintiff filed a written request for hearing received on August 31, 2017.  On April 19, 2019, she appeared with her attorney and testified at a hearing before the ALJ.  A vocational expert also testified (Doc. 24-3 at 53).  On June 18, 2019, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act (Doc. 24-3 at 54). The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision (Doc. 24-3 at 9).  On May 20, 2021, Plaintiff sought this Court's review.

**DISCUSSION**

**I.      Legal Standard**

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Claims that are not actually argued in an appellant's opening brief are not considered on appeal.  *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).  Only issues that are argued specifically and distinctly in a party's opening brief are reviewed.  *Id.*

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*  Generally, when the evidence is susceptible to more than one rational interpretation, courts must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  "Overall, the standard of review is 'highly deferential.'"  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).

Harmless error principles apply in the Social Security Act context.  *Molina*, 674 F.3d at 1115.  An error is harmless if there remains substantial evidence supporting the

ALJ's decision, and the error does not affect the ultimate determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

## II. Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 18, 2017. (Doc. 24-3 at 55.) At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, asthma, depression and anxiety. (Doc. 24-3 at 55.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 24-3 at 56.)

At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following limitations: can lift/carry 20 pounds occasionally and 10 pounds frequently, can sit or stand/walk with normal breaks for about 6 hours per 8 hour workday, can occasionally climb ladders/ropes/scaffolds/stairs/ramps, can frequently balance, stoop or kneel, can occasionally crouch or crawl, can occasionally overhead reach bilaterally but has no other reaching limitations, should avoid concentrated exposure to extreme cold, fumes/odors/dusts/gases/poor ventilation, moving machinery and unprotected heights, is able to understand and remember simple work instructions, work procedures and work location, is able to carry out simple work instructions, perform within a schedule and sustain a routine and make simple work related decisions, would do better in jobs with static tasks and where changes can be explained, and is able to meet the basic mental demands of competitive, remunerative, unskilled work in predictable environment on a sustained basis. (Doc. 24-3 at 57.)

The ALJ further found that Plaintiff is unable to perform any of her past relevant work. (Doc. 24-3 at 61.) At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Doc. 24-3 at 62.)

**III. Analysis**

    **A.   ALJ's Weighing of Medical Opinions**

Plaintiff challenges the ALJ's determination affording her treating physician's opinion little weight. (AR at 60.)[1] Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight afforded a non-examining physician's opinion depends on the extent to which he provides supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995,

---

[1] Because Plaintiff's most recent application was filed prior to March 27, 2017, the prior regulations on treating medical source statements govern. 20 C.F.R. § 404.1520c.

1012 (9th Cir. 2014). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Orn*, 495 F.3d at 632.

In deciding weight to give any medical opinion, the ALJ considers not only whether the source has a treating or examining relationship with the claimant, but also whether the treatment or examination is related to the alleged disability, the length of the relationship, frequency of examination, supporting evidence provided by the source, and medical specialization of the source. 20 C.F.R. § 404.1527(c). The opinion of any physician, including a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). Additionally, the ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Here, the ALJ gave "little weight" to the treating physician's ("Dr. Wilson") opinions about Plaintiff's abilities to do work-related activities. (AR at 60.) Dr. Wilson opined that Plaintiff had significantly reduced capacity to perform certain work-related tasks, including that she may only sit 2 to 4 hours in a workday, stand or walk 3 hours per workday, never lift more than 10 pounds, occasionally lift up to 10 pounds, and requires several unscheduled breaks daily. (AR at 928-29.) The treating physician's opinion was contradicted by at least one other non-treating physician, Dr. Robert Gordon. (AR at 437.) In October 2016, Dr. Gordon conducted a 30-minute administrative examination of Plaintiff at the request of the state agency. (AR at 60, 437.) He opined that Plaintiff was more capable of sustaining work-related activities than Dr. Wilson's opinion suggests. The ALJ ultimately agreed with Dr. Gordon's analysis. More specifically, he determined that Plaintiff can frequently lift 10 pounds, occasionally lift 20 pounds, stand or walk 6 to 8 hours per workday, sit 6 to 8 hours per workday, and occasionally climb and crawl, and frequently balance, stoop, kneel, or crouch. (AR at 442-44.)

Because the treating physician's opinion is not uncontradicted, the ALJ need not offer clear and convincing reasons for rejecting it. The ALJ must, however, offer "specific and legitimate reasons" supported by substantial evidence in the record for rejecting the opinion. *Orn*, 495 F.3d at 632. Here, the ALJ's reason for affording the treating physician's opinion little weight was that his "opinion is not supported by his own treatment records." (AR at 60.) He further states that there is an alleged "pattern of subjective complaints unfounded by objective examinations continued throughout his notes." (AR at 61.)

At the outset, it is unclear if the ALJ's reason for rejecting Dr. Wilson's opinion is because the doctor's examination notes are inconsistent with his opinion or because the examination notes are inconsistent with Plaintiff's complaints, but all of his examples suggest it is the latter. He states that on multiple occasions, despite Plaintiff's chief reason for her visit being neck pain, back pain, or decreased range of motion, Dr. Wilson's charting allegedly did not substantiate those complaints. (AR at 61.)

Affording Dr. Wilson's opinion little weight because his examination notes were inconsistent with Plaintiff's complaints is not legitimate because it is factually incorrect. For example, the ALJ states that on one occasion, "the claimant reported neck pain with decreased range of motion and numbness in her upper left extremity and yet [Dr. Wilson's] physical examination reflected full range of motion with no tender points." (AR at 61.) The ALJ cites to two pages of Plaintiff's chart from two different doctor's visits for this observation. No charting from either visit, however, contains such an inconsistency. On Plaintiff's May 15, 2019 visit, her chief complaint is listed as "back pain," and the examination notes indicate back pain, limited range of motion, and some decreased sensation in her back. (AR at 945-46.) On Plaintiff's May 1, 2019 visit, her chief complaint is listed as "neck/back" and while the examination notes indicate that her back was "non-tender," they also reflect neck tenderness, decreased range of motion in the neck, and numbness. (AR at 947-48.) The examination thus does not show a "full range of motion with no tender points found," as the ALJ stated. (AR at 61.)

The ALJ states that this pattern of subjective complaints unfounded by objective examinations continues throughout several pages of Dr. Wilson's charts. Again, this is factually incorrect. While it is unnecessary to review each of the charts that the ALJ cites, several follow to demonstrate that the pattern in the charting was not a pattern of inconsistency. Instead, it tends to show consistency between the Plaintiff's chief complaint and Dr. Wilson's examination:

- Exhibit 26F at 6 – Plaintiff's chief complaint listed as "neck." Examination reflects limited range of motion in neck and tenderness in neck. (AR at 949-50.)
- Exhibit 26F at 8 – Plaintiff's chief complaint listed as "sick." Examination reflects limited range of motion in neck and tenderness in neck. (AR at 951-52.)
- Exhibit 26F at 11 – Plaintiff's chief complaint listed as "refills, weight loss, sleepy all the time." Examination reflects limited range of motion in neck and tenderness in neck. (AR at 954-55.)
- Exhibit 26F at 12 – Plaintiff's chief complaint listed as "neck pain." Examination reflects limited range of motion in neck and tenderness in neck. (AR at 956-57.)

It is unclear how the ALJ determined that Dr. Wilson's objective examinations were inconsistent with Plaintiff's complaints such that his medical opinion was based on Plaintiff's statements alone. Far from demonstrating that Plaintiff's neck or back pain was not reflected in objective examination, the notes demonstrate that even when Plaintiff's chief complaint was not her neck or back pain, such pain was often still noted in Dr. Wilson's objective examinations.[2]

Defendant argues a slightly broader point—that the ALJ's reason for rejecting Dr. Wilson's testimony is his treatment records do not support the highly restrictive limitations he said Plaintiff required. If this was the ALJ's reason for discounting Dr. Wilson's

---

[2] The Court finds two instances in which it appears Plaintiff's subjective complaint does not match Dr. Wilson's objective examination notes: 1) AR 706-07 – Dr. Wilson writes that Plaintiff has chronic neck pain, but the examination notes reflect a painless range of motion; and 2) AR 708-09 – Dr. Wilson writes that Plaintiff has chronic neck pain, but the examination notes reflect a normal inspection. These two instances, viewed in light of the nearly 250 pages of treatment notes from visits to Dr. Wilson, do not reflect a pattern of inconsistency.

- 7 -

opinion, he offers no examples or explanation for why this is the case.[3] Defendant attempts to supplement this reasoning by providing citations to several of Plaintiff's treatment records in which she demonstrates some combination of a painless range of motion, non-tenderness in her neck or back, or a normal inspection of her neck or back. These records do not overcome the ALJ's failure to provide specific and legitimate reasons for rejecting Dr. Wilson's testimony.

To demonstrate that his reasons are specific and legitimate, the ALJ should provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ himself did not set out such findings regarding Dr. Wilson's opinion, and the existence of some normal inspections of Plaintiff does not necessarily mean his opinion should be afforded little weight. Although Defendant highlights that on some occasions, the treatment notes reflect either a normal neck or back inspection, it fails to recognize that on the vast majority of visits, Plaintiff presented a neck or back problem that was recorded in Dr. Wilson's objective observations. The Court has found less than ten instances out of 100 doctor's visits when Plaintiff did not present either tenderness or decreased range of motion in her neck or back.[4] It is true that the majority of Plaintiff's visits to Dr. Wilson occurred after Plaintiff filed her application and Dr. Wilson rendered his opinion. Nevertheless, prior to Dr. Wilson's opinion, Plaintiff was seen by him twenty times, received multiple x-rays under his care, and complained of neck pain, back pain, or numbness in the extremities during at least eight of the visits.

The bulk of Dr. Wilson's treatment notes indicate, at the very least, that Plaintiff's complaints were consistent with his objective examinations. Further, they indicate that over the course of three years and a hundred visits to Dr. Wilson, Plaintiff consistently

---

[3] Aside from the alleged inconsistencies between Plaintiff's complaints and the examination notes which, as noted above, are erroneous.

[4] And the vast majority of those visits were for entirely unrelated complaints, including toenail removal (AR 1060), foot pain (AR 1010), and GERD, insomnia, and anxiety (AR 649).

presented similar (albeit, varying from visit to visit) neck and/or back symptoms. The ALJ failed to explain why Dr. Wilson's treatment records do not support his opinion as to Plaintiff's limitations. A radiology report reflected a spinal fracture and mild degenerative changes, as Dr. Wilson's opinion reflects. (AR at 744.) Although a subsequent x-ray shows the healing of the fracture after Dr. Wilson's opinion was submitted, it continued to reflect degenerative changes and other abnormalities. (AR at 535.) While perhaps the healed spine fracture could be a reason to discount Dr. Wilson's opinion to some extent, the ALJ failed to discuss the fracture, the degenerative disease, or any other conditions reflected in the radiology reports as the bases for Dr. Wilson's opinion.

Moreover, the ALJ must consider "the appropriate factors in determining the extent to which the opinion should be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). These factors include the length of the treating relationship, nature and extent of the treatment relationship, supportability of the medical source, consistency with the record, specialization, and other factors tending to support the medical opinion. 20 C.F.R. § 404.1527(c)(1)-(6) ("Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). The Ninth Circuit has said that "[t]his failure alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676. Thus, the ALJ's brief statement that Dr. Wilson's opinion was unsupported by his own treatment records is not specific nor legitimate, and fails to address the appropriate factors, as required when rejecting a treating physician's opinion. *See, e.g.*, *Trevizo*, 871 F.3d at 675 (finding an ALJ's "one-paragraph discussion of [treating physician's] medical opinion" in which the ALJ afforded it "little weight" because the objective evidence showed only mild disease and mild treatment insufficient under the specific and legitimate standard).

### B.     Harmless Error

"[H]armless error principles apply in the Social Security Act context." *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the ultimate nondisability determination." *Id.* In this

case, the ALJ's error is not harmless. The regulations clearly require that the ALJ give greater weight to a treating physician's opinion or provide specific and legitimate reasons for declining to do so. Here, the ALJ did neither. Giving Dr. Wilson's opinion greater weight could change the ultimate determination. It appears that the ALJ determined Plaintiff's residual functional capacity primarily, if not wholly, based on Dr. Gordon's description of Plaintiff's limitations. (AR at 442-44.) Dr. Gordon's assessment of Plaintiff's abilities seemingly does not address Plaintiff's joint degeneration or a current or previous fracture—the two bases for Dr. Wilson's assessment. In adopting Dr. Gordon's assessment, the ALJ determined that Plaintiff could perform light work activity with some additional limitations. (AR at 62.) If Dr. Wilson's opinion is given greater weight than Dr. Gordon's opinion, Plaintiff may be limited to performing only sedentary work or even a significantly reduced range of sedentary work activity. (AR at 60.) Because the jobs that the ALJ ultimately determined exist for Plaintiff in significant numbers in the national economy both require light work activity (AR at 62), affording Dr. Wilson's opinion a different weight could affect the ultimate determination.

"Usually, if additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019. The Social Security Act empowers courts to affirm, modify, or reverse a decision by the Commissioner, with or without remanding the cause for a rehearing, 42 U.S.C. § 405(g); however, courts typically exercise the power to remand with instructions to calculate and award benefits "when it is clear from the record that a claimant is entitled to benefits." *Garrison*, 759 F.3d at 1019. More specifically, "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will . . . take that testimony to be established as true." *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1998).

Here, the conditions to credit Plaintiff's testimony as true are not met. The outstanding issue to be resolved is what weight to afford Plaintiff's treating physician's opinion, considering the factors set out in the regulations. After that determination, the record may need to be developed further as to Plaintiff's RFC and whether significant jobs that she can perform exist in the national economy. If the ALJ determines that the opinion should be afforded little weight, he should provide specific and legitimate reasons for the determination, making a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. The case is therefore remanded for the ALJ to determine the proper weight to afford Dr. Wilson's opinions, and then determine Plaintiff's RFC and whether significant jobs exist in the national economy in light the physicians' opinions.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that the final decision of the Administrative Law Judge dated June 18, 2019, is **VACATED** and this case is **REMANDED** for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and terminate this action.

Dated this 12th day of April, 2023.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge